# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARTEL VALENCIA-CORTEZ,<br><br>Defendant. | Case No. 16CR0730-H<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER TITLE 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 180.) |

Pending before the Court is Defendant Martel Valencia-Cortez's ("Defendant") pro se motion for compassionate release under Title 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 180.) The Defendant argues that "extraordinary and compelling reasons" exist to justify compassionate release under § 3582(c)(1)(A)(i). (Id.) The Government has filed a response in opposition to the Defendant's motion (Doc. No. 189) and the Defendant has filed a reply to the Government's response (Doc. No. 195.) For the reasons set forth below, the Court denies the Defendant's motion for compassionate release under § 3582(c)(1)(A).

## Background

On May 12, 2017, a jury returned a guilty verdict against the Defendant for

assault on a federal officer with use of a deadly or dangerous weapon in violation of Title 18 U.S.C. § 111(a)(1) and (b) as charged in Count 1 of the Superseding Indictment and bringing in aliens for financial gain in violation of Title 8 U.S.C. § 1324(a)(2)(B)(ii) as charged in Counts 7, 8, and 11 of the Superseding Indictment.[1] (Doc. Nos. 97 and 103.) On August 28, 2017, the Court sentenced the Defendant to 87 months of custody on each count to run concurrent, followed by three years of supervised release on each count to run concurrent. (Doc. Nos. 114 and 116.). On August 28, 2017, the Magistrate Judge appointed appellate counsel for the Defendant. (Doc. No. 115.) Thereafter, on August 31, 2017, Defendant filed his notice of appeal to the United States Court of Appeals for the Ninth Circuit. (Doc. No. 117.)

On April 24, 2019, the Ninth Circuit issued its amended decision affirming the Defendant's conviction, vacating the Defendant's sentence, and remanding the case back to this Court for re-sentencing. United States v. Valencia-Cortez, 769 F. App'x 419 (9th Cir.), cert. denied, 140 S. Ct. 578, 205 L. Ed. 2d 360 (2019). The Ninth Circuit remanded the case for re-sentencing due to a sentencing guideline calculation error by this Court. Id at 424.  On May 2, 2019, the Ninth Circuit issued its mandate. (Doc. No. 169.) On July 15, 2019, the Court re-sentenced the Defendant to 78 months of custody on each count to run concurrent, followed by 3 years of supervised release on each count to run concurrent. (Doc. Nos. 168 and 170.) On July 22, 2019, the Defendant filed a notice of appeal to the Ninth Circuit. (Doc. No. 171.) On August 13, 2020, the Ninth Circuit issued is decision affirming the sentence. United States v. Valencia-Cortez, 816 F. App'x 204 (9th Cir. 2020), cert. denied, 141 S. Ct. 1508, 209 L. Ed. 2d 186 (2021). On November 17, 2020, the Ninth Circuit issued its mandate. (Doc. No. 176.)

## Discussion

A district court is generally prohibited from modifying a sentence once it has

---

[1] The Court, with the agreement of the parties and to avoid revealing other pending charges to the jury, re-numbered Counts 1, 7, 8, and 11 of the Superseding Indictment as Counts 1, 2, 3, and 4 of the Indictment for trial purposes only.

been imposed, unless expressly permitted by law. <u>United States v. Penna</u>, 319 F.3d 509, 511 (9th Cir. 2003); <u>United States v. Handa</u>, 122 F.3d 690, 691 (9th Cir. 1997), as amended on reh'g (Aug. 4, 1997), cert. denied, 522 U.S. 1083, 118 S.Ct. 869, 139 L.Ed.2d 766 (1998) ("A district court does not have inherent power to resentence defendants at any time. Its authority to do so must flow either from the court of appeals mandate under 28 U.S.C. § 2106 (1982) or from Federal Rule of Criminal Procedure 35.") (citations omitted); <u>United States v. Barragan-Mendoza</u>, 174 F.3d 1024, 1028 (9th Cir. 1999) ("[D]istrict courts do not have 'inherent authority' to reconsider sentencing orders.") (citations omitted).

One exception to the district court's prohibition from modifying a sentence is the compassionate release provision of Title 18 U.S.C. § 3582(c)(1)(A). That provision provides:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
> (1) in any case--
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> (i) extraordinary and compelling reasons warrant such a reduction; or
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2]

In order for a district court to entertain a defendant's motion for compassionate release, a defendant must first meet the administrative exhaustion criteria set forth in § 3582(c)(1)(A). United States v. Keller, 2 F.4th 1278, 1282 (9th Cir. 2021) ("Joining the unanimous consensus of our sister circuits, we hold that § 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked."). As the movant, the burden rests with the Defendant to provide proof that he has met the exhaustion criteria set forth in § 3582(c)(1)(A) and to establish that "extraordinary and compelling reasons exists" to warrant his release. See United States v. Holden, 452 F. Supp. 3d 964, 969 (D. Or. 2020) (Brown, J.) ("A defendant seeking a reduction in his terms of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review and that compelling and extraordinary reasons exist to justify compassionate release."); See also United States v. Osorio-Arellanes, No. CR-11-00150-001-TUC-DCB (BGM), 2021 WL 673292, at *2 (D. Ariz. Feb. 22, 2021) (Bury, J.) ("Defendant bears the burden of proving he meets all elements of eligibility for a sentence reduction.").

In this matter, the Government filed a copy of the Defendant's request to the Warden seeking compassionate release dated September 4, 2020. (Doc. No. 190, Ex. 2.) Given that a period of 30 days has elapsed from the date of the request, the Court is

---

[2] A prior version of § 3582(c)(1)(A) permitted a court to reduce a defendant's term of imprisonment only upon the motion of the Director of the Bureau of Prisons ("BOP.") The First Step Act of 2018, Pub. L. No. 115-391, § 603, modified § 3582(c)(1)(A) to allow a defendant to make a motion to the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." See Mohrbacher v. Ponce, No. CV 18-00513-DMG (GJS), 2019 WL 161727 (C.D. Cal. Jan. 10, 2019) (Gee, J.) (Discussing modifications made to § 3582(c)(1)(A) by the First Step Act); See also United States v. Curry, No. CR 6:06-082-DCR, 2019 WL 508067 (E.D. Ky. Feb. 8, 2019) (Reeves, J.) (same.)

satisfied that the Defendant has met the exhaustion requirement under § 3582(c)(1)(A). See United States v. Walters, No. 2:12-CR-00375-TLN-AC, 2021 WL 3565327, at *1 (E.D. Cal. Aug. 12, 2021) (Nunley, J.) ("Because more than 30 days have elapsed since Defendant's request, Defendant has met the exhaustion requirement [under § 3582(c)(1)(A)].").

Under § 3582(c)(1)(A)(i), a court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." In determining what constitutes "extraordinary and compelling reasons," the Ninth Circuit has held that under the current version of U.S.S.G. § 1B1.13[3] "[t]he Sentencing

---

[3] U.S.S.G. § 1B1.13 cmt. n.1(A) and (B) (Nov. 1, 2018) provides:

> 1. Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.--
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is--
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.--
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021).[4] Therefore, in the absence of binding applicable policy statements, "district courts are 'empowered ... to consider any extraordinary and compelling reason for release that a defendant might raise.'" United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (citing United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, "[i]n exercising its discretion, this Court looks to the [non-binding] policy statement[s] for helpful guidance." United States v. Miller, No. 15-CR-00471-CRB-1, 2021 WL 2711728, at *2 (N.D. Cal. July 1, 2021) (Breyer, J.).

As an initial matter, the Court notes that although the impact of the current pandemic on the detention facilities is of course concerning to the Court, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Moreover, in light of the recent availability and efficacy of COVID-19 vaccines, this Court is less incline to grant compassionate release based on circumstances related to the pandemic. See United States v. Tsingine, No. CR-09-08132-001-PCT-GMS, 2021 WL 3419056, at *2 (D. Ariz. Aug. 5, 2021) (Snow, C.J.) ("In light of the efficacy of COVID-19 vaccines,

---

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

[4] Prior to Aruda, district courts were split on the issue of whether or not the policy statements contained in the current version of U.S.S.G. § 1B1.13 were binding when considering motions filed by a defendant under § 3582(c)(1)(A). The Ninth Circuit has now resolved that split within our circuit.

courts consistently refuse to find that COVID-19 presents an extraordinary or compelling reason for relief."). Nevertheless, the existence of the pandemic is among numerous factors the Court may consider in determining what constitutes "extraordinary and compelling reasons" to grant early release.

The Defendant argues that the following factors, which include certain Title 18 U.S.C. § 3553(a) factors and are detailed in the Defendant's pleadings, rise to the level of "extraordinary and compelling reasons" to justify compassionate release: the conditions of the Defendant's confinement during the pandemic; the Defendant's medical conditions; the Defendant's desire to care for his mother; the Defendant's argument that he is not a danger to the community; and the Defendant's assertion that a petition for writ of certiorari is pending before the Supreme Court of the United States. Under Aruda, the Court is permitted to consider any and all factors raised by the Defendant in support of his request for compassionate release.

The Defendant alleges that the conditions of his confinement, including allegations that the BOP has failed to implement guidelines set by the Centers for Disease Control and Prevention ("CDC") regarding social distancing, justifies granting compassionate release. In response, the Government has outlined the steps that the BOP has taken to mitigate the risk of transmitting the virus. (Doc. No. 189 at 2-5.) In reply, the Defendant contests the Government's assertion that the BOP has implemented these measures. (Doc. No. 195.) To the extent that the Defendant is requesting early release based on Eighth Amendment grounds, the Court concludes that § 3582(c)(1)(A)(i) is not the proper vehicle to seek remedies for these alleged constitutional violations. See United States v. Numann, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020) (Burgess, J.) (An Eighth Amendment claim "relating to the manner and conditions of confinement—are not properly brought in a motion for compassionate release [under § 3582(c)(1)(A)] and this Court does not have jurisdiction to consider them."); See also United States v. Pooler, No. 3:18-CR-00137, 2020 WL 7046964, at *7 (S.D. Ohio Dec. 1, 2020) (Rose, J.) ("[A] compassionate release motion

likewise is not the appropriate mechanism or vehicle to raise such a claim of alleged constitutional violations."); United States v. Rollness, No. CR06-041RSL, 2021 WL 4476920, at *6 n.6 (W.D. Wash. Sept. 30, 2021) (Lasnik, J.) ("Any Eighth Amendment arguments defendant may have regarding the conditions of confinement may be properly brought in a habeas petition or a direct civil claim, not a motion for compassionate release."); Miller 2021 WL 2711728, at *4 ("[t]he ordinary remedy for ongoing, constitutionally inadequate care is an order that does 'not allow [such] constitutional violations to continue,' even if that order involves an 'intrusion into the realm of prison administration.'") (citing Brown v. Plata, 563 U.S. 493, 511 (2011)). Nevertheless, the Court will take the allegations into consideration in determining whether compassionate release is warranted.

Although the Defendant received a single dose of the Johnson & Johnson vaccine and is now fully vaccinated from COVID-19, the Defendant argues that the new mutated Delta variant of the virus does not make the Defendant fully immune from getting infected. (Doc. No. 195 at 2.) While the Court understands the Defendant's concern over the Delta variant, "[m]ost courts have found that the Delta variant 'does not pose an extraordinary and compelling risk to vaccinated individuals.'" United States v. Posey, No. CR18-280RSL, 2021 WL 4745523, at *5 (W.D. Wash. Oct. 12, 2021) (Lasnik, J.); See also United States v. Finazzo, No. CR 11-00383 LEK, 2021 WL 4391256, at *3 (D. Haw. Sept. 24, 2021) (Kobayashi, J.) ("[Defendant's] argument that it is possible that she may remain susceptible to infection despite her vaccination status is unavailing [because] 'COVID-19 vaccines are effective against severe disease and death from variants of the virus that causes COVID-19 currently circulating ..., including the Delta variant.' The possibility of contracting COVID-19 falls far short of demonstrating an extraordinary and compelling reason.") (citations omitted). Thus, the Court concludes that the risk of infection from the Delta variant coupled with the Defendant's vaccination status do not rise to the level of being "extraordinary and

compelling reasons" to grant his motion for compassionate release.[5] Additionally, the Defendant is free to request a booster vaccine dose in order to increase his protection from the COVID-19 variants. See United States v. Coversup, No. CR 19-15-BLG-SPW, 2021 WL 6078787, at *1 (D. Mont. Dec. 23, 2021) (Watters, J.) ("Most importantly, vaccines and, presumably, boosters are now available to ameliorate the risk of severe illness or death.").

The Defendant asserts that he suffers from the following medical conditions that would put him at greater risk of developing severe COVID-19 symptoms: (1) the Defendant is a former smoker; (2) the Defendant is obese; (3) the Defendant suffers from a chronic sinus infection; (4) the Defendant has a hyperactive thyroid; and (5) the Defendant's age. (Doc. No. 180 at 8-9.) As to the assertion that the Defendant is a former smoker, the medical records contradict the Defendant's assertion. (See Sealed Doc. No. 192, Ex. 6 at pp. 41, 80, 97, 110, 117, and 147.) Even if the medical records confirmed that the Defendant has a history of smoking, being a former smoker does not rise to the level of being an "extraordinary and compelling reason" to justify early release. See United States v. Quintero-Soto, No. CR0800992001PHXMTL, 2021 WL 4552545, at *3 (D. Ariz. Oct. 5, 2021) (Liburdi, J.) ("A past history of smoking does not meet the extraordinary and compelling standard."); See also United States v. Goldman, No. 2:18-CR-00077-TLN, 2020 WL 2850229, at *3 (E.D. Cal. June 2, 2020) (Nunley, J.) ("Defendant's past history of smoking is not sufficient to meet the extraordinary and compelling standard, even with the threat posed by COVID-19.").

The Defendant asserts that he is obese with a body mass index ("BMI") of 30. The Government responds that while the medical records do not provide a BMI, the "Defendant's height and weight by no means indicates extreme obesity." (Doc. No. 189 at 9.) The Court agrees with the Government and concludes that the Defendant's slightly

---

[5] A new mutated variant of the COVID-19 virus, the Omicron variant, has recently emerged as of the issuance of this order. However, the data concerning the new mutated variant is insufficient to conclude that compassionate release is warranted at this time.

elevated BMI does not rise to the level of being an "extraordinary and compelling reason" to warrant early release. <u>See</u> <u>United States v. Ruiz</u>, No. 19-CR-1285-GPC, 2021 WL 1085715, at *5 (S.D. Cal. Mar. 22, 2021) (Curiel, J.) ("Ultimately, this Court does not find that [Defendant's] slightly elevated BMI of 31.3 qualifies as an extraordinary and compelling reason justifying his release. While obesity of any nature increases the risk of suffering from severe illness as a result of contracting COVID-19, the medical literature suggests that risk is far greater as one's BMI approaches 40."). Even with a slightly elevated BMI, the Court concludes that the Defendant's BMI coupled with his vaccination status does not present "extraordinary and compelling reasons" to grant early release. <u>See</u> <u>United States v. Wills</u>, No. 3:15-CR-00465-BR, 2021 WL 2179256 (D. Or. May 27, 2021) (Brown, J.) (Denying compassionate release for a defendant who is obese, has high cholesterol, high blood pressure, and chronic back pain but is fully vaccinated against COVID-19.).

The Defendant argues that his chronic sinus infection and his hyperactive thyroid are "extraordinary and compelling reasons" to grant early release. However, as the Government points out, neither medical conditions are listed under the CDC's list of medical conditions associated with high risk of severe COVID-19. Accordingly, the Court concludes that neither medical conditions asserted by the Defendant constitutes "extraordinary and compelling reasons" to justify early release. <u>See generally</u> <u>United States v. Sweeney</u>, No. 1:19-CR-00089-DCN, 2021 WL 3781871 (D. Idaho Aug. 24, 2021) (Nye, C.J.) (Denying compassionate release for a defendant who suffers from various medical conditions including a severe sinus infection); <u>United States v. Iribe</u>, No. 00CR1242 JM, 2021 WL 347692, at *3 (S.D. Cal. Feb. 2, 2021) (Miller, J.) (Concluding that hyperthyroidism, when controlled medically, does not warrant compassionate release.). Furthermore, the Defendant's medical records indicate that the Defendant is receiving treatment for these medical conditions and the Defendant asserts that he is taking medication for these conditions. (Doc. No. 180 at 9.) Accordingly, the Defendant's medical conditions that are being treated by the BOP are not sufficient to

establish "extraordinary and compelling reasons" to grant compassionate release. See United States v. Weidenhamer, No. CR1601072001PHXROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019) (Silver, J.) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."); United States v. Lii, No. CR 07-00423 HG-01, 2021 WL 5828370, at *4 (D. Haw. Dec. 8, 2021) (Gillmor, J.) ("The record demonstrates that Defendant has received and continues to receive appropriate medical care by the BOP. Conditions that can be managed in prison are not a basis for compassionate release.").

The Defendant argues that his age justifies early release. The Court disagrees. The Defendant is 45 years old as of the date of this order and his age falls outside the age range of those who are at a higher risk of developing severe COVID-19. See Goldman, 2020 WL 2850229, at *3 ("Defendant's age, 45, does not place him in a higher at-risk group."). Even taking all the Defendant's medical conditions into account, including his age, the Court concludes that the medical conditions coupled with the Defendant's vaccination status and the BOP's treatment of his medical conditions do not constitute "extraordinary and compelling reasons" to grant early release. See United States v. Grummer, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (Sabraw, C.J.) (Denying a defendant's motion for compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19."); See also United States v. Hayes, No. 4:17-CR-00289-DCN, 2021 WL 2533517, at *3 (D. Idaho June 21, 2021) (Nye, C.J.) ("Many courts have found that a vaccinated prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions."); United States v. Sakuma, No. CR 12-00055 JMS, 2021 WL 1536571, at *3 (D. Haw. Apr. 19, 2021) (Seabright, C.J.), appeal dismissed, No. 21-10135, 2021 WL 5397610 (9th Cir. Sept. 3, 2021) ("[T]aking into account Defendant's age, risk factors, and that he has been vaccinated, the court concludes that he has failed to demonstrate that extraordinary and

compelling reasons warrant compassionate release.").

One of the Defendant's motivating factors in his request for compassionate release is to care for and be with his ailing mother. (Doc. No. 1705 at 44.) However, it is not extraordinary that an incarcerated defendant is not able to be with an ailing or elderly parent. Such a circumstance is an expected consequence of a duly imposed custodial sentence. While the Court certainly sympathizes with the Defendant's concern over his mother's dotage, the Defendant's desire to be with his mother is not a basis, by itself, to warrant compassionate release. See United States v. Moalin, No. 10CR4246 JM, 2021 WL 3419417, at *7 (S.D. Cal. Aug. 4, 2021) (Miller, J.) ("[T]he desire among prison inmates to care for an elderly or sick parent does not, by implication, make this reason either extraordinary or compelling."); See also United States v. Ingram, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (Sargus, C.J.) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."); United States v. Baye, 464 F. Supp. 3d 1178, 1190 (D. Nev. 2020) (Jones, J.) ("While the Court sympathizes with Defendant regarding his mother's deteriorating condition, it also agrees with other courts in concluding that such a circumstance is not extraordinary[.]"). Even considering this factor along with the other factors raised by the Defendant, the Court concludes that the Defendant's circumstances do not rise to the level of being "extraordinary and compelling reasons" to grant his motion for compassionate release. See United States v. Labra, No. 4:15-CR-107 (1), 2021 WL 3376828, at *6 (E.D. Tex. Aug. 2, 2021) (Crone, J.) (Concluding that a defendant's numerous health conditions coupled with his "purported desire to care for his mother does not constitute extraordinary and compelling reasons warranting compassionate release.").

The Defendant argues that the pending petition for writ of certiorari before the Supreme Court is a basis grant compassionate release. However, this argument is moot because the Supreme Court has denied the Defendant's petition for writ of certiorari. Valencia-Cortez v. United States, 141 S. Ct. 1508, 209 L. Ed. 2d 186 (2021). Even if a

petition for writ of certiorari was pending before the Supreme Court, such a factor would not constitute an "extraordinary and compelling reason" to grant early release because this Court is bound by the Ninth Circuit's decision in this case regardless of a pending petition for writ of certiorari before the Supreme Court. See Yong v. INS, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority.").

The Defendant argues that he is not a danger to the community because he will be deported back to the Republic of Mexico upon completion of his custodial sentence and will not return to the United States, a factor he asserts weighs in favor of compassionate release. The Court disagrees.[6] The Defendant was deported on a prior occasion and his deportation did not deter him from committing the underlying offense in this case. Moreover, the Defendant has a propensity for endangering others as evidence by his conviction for assault of a federal officer and his past criminal conduct as detailed in the Pre-Sentence Report. (See PSR, Doc. No. 105 at 10-11.) Accordingly, the Court concludes that the Defendant's assertion does not weigh in favor of compassionate release. Even if the Court agreed with the Defendant that he is not a danger to the community, this factor alone or in combination with the other factors raised by the Defendant is not an "extraordinary or compelling reason" to grant early release. See United States v. Joseph, No. CR 06-00080 (02) SOM, 2021 WL 5122355, at *5 (D. Haw. Nov. 3, 2021) (Mollway, J.) (Denying compassionate release for a defendant who "does not appear to have had any recent disciplinary issues, indicating that [Defendant] is possibly less of a danger to the community if released at this point" but concluding that such factors "are not extraordinary or compelling such that

---

[6] A "dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i)[.]" Aruda, 993 F.3d at 799. However, the Court addresses whether the Defendant's assertion, that he is not a danger to the community, weighs in favor of compassionate release.

compassionate release is appropriate at this time."). To the extent the Defendant argues that his immigration status favors compassionate release, the Court also disagrees. See United States v. Rosas-Lozano, No. 3:17-CR-00209-JO-2, 2021 WL 3141507, at *2 (D. Or. July 23, 2021) (Jones, J.) ("Because Defendant's status as a removable alien is not unusual, his immigration status, without more, is not an extraordinary and compelling reason for granting compassionate release.").

The Court next considers the underlying criminal conduct committed by the Defendant in this case, the Defendant's criminal history and the rest of the § 3553(a) factors[7] in determining whether compassionate release is warranted in this case. The Defendant committed serious offenses by assaulting a federal officer and by bringing in aliens for financial gain. Moreover, the Defendant previously committed the latter offense that resulted in prison sentence in a prior case and was not deterred from committing the underlying offenses in this case. Accordingly, the offenses committed by the Defendant weigh heavily against compassionate release, and the Court concludes that granting early release now would stray from the § 3553(a) factors and would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant. See United States v. Bongiorni, No. CR16-109RSL, 2021 WL 2413348, at *5 (W.D. Wash. June 14, 2021) (Lasnik, J.) ("The need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence disfavor granting compassionate release here."); See also

---

[7] The 18 U.S.C. § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims.

United States v. Jefferson, No. 2:17-CR-00130-MCE, 2021 WL 4033248, at *3 (E.D. Cal. Sept. 3, 2021) (England, J.) ("[R]equiring Defendant to serve his full sentence is necessary to 'reflect the seriousness of his offense, promote respect for the law, [and] protect the public from further crimes of the [D]efendant.'"); United States v. Morrow, No. 8:15-CR-00099-JLS, 2021 WL 3080625, at *6 (C.D. Cal. July 21, 2021) (Staton, J.) ("[R]educing Defendant's sentence would not 'reflect the seriousness of the offense, ... promote respect for the law, and ... provide just punishment for the offense.'"); United States v. Williams, No. 13-CR-00764-WHO-1, 2021 WL 2936728, at *3 (N.D. Cal. July 13, 2021) (Orrick, J.) ("The seriousness of the offenses militates heavily against compassionate release.").

Balancing these factors along with the factors raised by the Defendant in the context of a § 3582(c)(1)(A)(i) motion, the Court concludes that the aggravating facts of the underlying criminal conduct and the defendant's criminal history outweigh the factors in favor of compassionate release. See e.g., United States v. Mendoza, No. CR13-0238-JCC, 2021 WL 2856673, at *3 (W.D. Wash. July 8, 2021) (Coughenour, J.) ("On balance, the Court finds the § 3553(a) factors weigh against reducing [defendant's] sentence."); United States v. Fields, No. CR-18-00136-003-PHX-SMB, 2021 WL 2780873, at *4 (D. Ariz. July 2, 2021) (Brnovich, J.) ("[T]he Court finds that the 18 U.S.C. § 3553(a) factors also weigh against compassionate release."); United States v. Gibson, No. CR 16-00746 JMS (06), 2021 WL 328913, at *5 (D. Haw. Feb. 1, 2021) (Seabright, C.J.) ("[A] consideration of the § 3553(a) factors weighs heavily against granting [compassionate release]."); United States v. Lewis, No. CR-18-00927-PHX-DGC-1, 2021 WL 847991, at *4 (D. Ariz. Mar. 5, 2021) (Campbell, J.) ("The Court finds that the § 3553(a) factors outweigh the extraordinary and compelling reasons allowing for compassionate release.").

In light of the seriousness of the underlying offenses, the need to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant and after taking into

consideration all of the Defendant's equities, the Court re-sentenced the Defendant to a custodial term of 78 months, the low end of the Sentencing Guideline range. Granting early release now would result in unwarranted sentencing disparities. See United States v. Shelden, No. 2:18-cr-00237-JAD-PAL, 2021 WL 3288597, at *2 (D. Nev. July 30, 2021) (Dorsey, J.) ("[G]ranting early release would amount to a several-level downward variance, creating an unwarranted sentencing disparity."); See also United States v. Hernandez, No. CR14-5105 BHS, 2021 WL 1313173, at *4 (W.D. Wash. Apr. 8, 2021) (Settle, J.) ("[Compassionate] [r]elease now would also result in an unwarranted sentencing disparity.").

Finally, the Defendant is subject to an immigration detainer and the Government urges the Court to consider this as a factor weighing against compassionate release. (Doc. No. 189 at 12-13.). The Defendant argues otherwise. (Doc. No. 195 at 4-5.) The Court need not consider this as a factor weighing against early release because the Court has already determined that the factors raised by the Defendant do not constitute "extraordinary or compelling reasons" to grant early release and the § 3553(a) factors do not support compassionate release in this case. See Keller, 2 F.4th at 1284 ("[A]lthough a district court must perform this sequential inquiry before it grants compassionate release, a district court that properly denies compassionate release need not evaluate each step.") (emphasis in original omitted). Even if the Defendant was able to show "extraordinary and compelling reasons" to grant compassionate release, the Court would still deny the Defendant's motion because the § 3553(a) factors weigh heavily against granting early release. See United States v. Capito, No. CR1008050001PCTMTL, 2021 WL 4552954, at *6 (D. Ariz. Oct. 5, 2021) (Liburdi, J.) ("Even if [Defendant] had shown extraordinary and compelling circumstances warranting compassionate release and had shown that he did not pose a danger to the community, the Court would still deny [Defendant's] motion because the § 3553(a) factors weigh against compassionate release in [his] case."); See also Keller, 2 F.4th at 1284 (Noting "the Sixth Circuit implicitly endorsed this approach when it 'assumed for

the sake of argument that extraordinary and compelling reasons existed,' but then proceeded to deny the defendant's motion because it found that an evaluation of the § 3553(a) factors precluded relief.") (citing <u>United States v. Jones</u>, 980 F.3d 1098, 1108, 1111–15 (6th Cir. 2020)).

### Conclusion

After taking into consideration the pandemic, the factors raised by the Defendant, the underlying criminal offenses committed by the Defendant, the Defendant's criminal history, the Defendant's vaccination status, and after consulting the § 3553(a) factors, the Court concludes that there are no "extraordinary and compelling reasons" to justify compassionate release in this case. Even if the factors raised by the Defendant constituted "extraordinary and compelling reasons" to justify compassionate release, the Court concludes that granting early release would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant as set forth under § 3553(a). Accordingly, after considering the Defendant's motion and applying the relevant law and legal standards, and based on the current record, the Court DENIES the Defendant's motion for compassionate release under Title 18 U.S.C. § 3582(c)(1)(A).

IT IS SO ORDERED.

DATED: <u>January 3, 2022</u>

HONORABLE MARILYN L. HUFF
UNITED STATES DISTRICT JUDGE